Arnold B. Calmann
Katherine Escanlar
**SAIBER, SCHLESINGER SATZ &
  GOLDSTEIN, LLC**
One Gateway Center, 13th Floor
Newark, New Jersey 07102
(973) 622-3333

Shaffin A. Datoo
**VENABLE LLP**
The Chrysler Building, 56th Floor
405 Lexington Avenue
New York, New York  10174
(212) 307-5500

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAGWITCH L.L.C., | Civil Action No. 07-3040 (SRC) |
| Plaintiff, | **DECLARATION OF CHARLES S. TOBIAS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| PUSSER'S, INC., et al. | |
| Defendants. | *Document Filed Electronically* |

**Charles S. Tobias** makes this declaration pursuant to 28 U.S.C. § 1746 and in support of the Defendants' Motion to Dismiss the above-captioned action.

1.  I am 73 years of age.  I am competent to testify to the matters set forth in this declaration.

2.  I am a resident, citizen, and domiciliary of the British Virgin Islands ("BVI").  I have resided and been domiciled in the BVI since 1979.

-2-

3. I have not resided in or maintained a residence in the United States for more than 30 years. I have never been a citizen, domiciliary or resident of New Jersey.

4. I have never have owned, leased or otherwise occupied any real property in New Jersey.

5. I have never maintained any tangible or intangible personal property in New Jersey, and I have never kept bank accounts or made investments in New Jersey.

6. I have never derived any income from New Jersey.

7. I have never carried on a business, or otherwise engaged in business activities in or directed at New Jersey in or on my own behalf. Nor, so far as I know, have I ever carried on a business or otherwise engaged in business activities in or directed at New Jersey on behalf of any companies or entities with whom I have been associated. I have never, until the instant action, been involved in litigation in New Jersey and I have never entered into any contract governed by New Jersey law or choosing New Jersey as the venue for the resolution of legal disputes.

8. Except on those few occasions when my travel from one place to another was routed through New Jersey, in which instances I was in New Jersey for a matter of at most a few hours, I have not been physically present in New Jersey in at least ten years.

9. I have received and read the complaint filed by Magwitch, LLC ("Magwitch"), in the above-captioned action against Pusser's, Inc., ("Pusser's Florida"), Pusser's, Ltd. ("Pusser's Ltd") Pusser's West Indies, Ltd. ("PWI"), and me individually. Pusser's Florida, Pusser's Ltd, and PWI are hereafter sometimes referred to collectively as "the Pusser's entities." I have authority to speak on behalf of Pusser's Florida, Pusser's Ltd, and PWI as an officer or director of those companies.

10. Pusser's Florida is a corporation organized under the laws of the state of Florida but it has had no business activity since 2005. It has no employees and has no income. It owns no property and, except for unliquidated legal claims it may have, it has no assets. At the time when Pusser's Florida was actively engaged in business pursuits, its activities, properties, and employees were in Florida, Maryland and South Carolina, not New Jersey.

11. Pusser's Ltd is a corporation organized under the laws of the BVI. It is the sole shareholder of Pusser's Florida. Its operations in the United States, when they were active, were through its subsidiaries, including Pusser's Florida, Pusser's, Inc., a South Carolina corporation ("Pusser's SC"), now defunct, and two other entities -- Pusser's, Inc. of Maryland ("Pusser's MD"), and Pusser's Retail, Inc. of Delaware ("Pusser's DE") -- which were merged into Pusser's Florida in 2003.

12. PWI is a corporation organized under the laws of the BVI. PWI is wholly owned by me. PWI has never conducted business in New Jersey. Rather, since 2002 PWI has owned and operated the Pusser's branded restaurants, retail outlets, and other operations in the Caribbean, as distinguished from the Pusser's branded operations in the United States.

13. None of the Pusser's entities has ever owned, leased, or otherwise occupied any real property in New Jersey.

14. None of the Pusser's entities has ever maintained any tangible or intangible personal property in New Jersey, and none of them has ever kept bank accounts or made investments in New Jersey.

15. None of the Pusser's entities has ever carried on any business in New Jersey, or otherwise engaged in business activities in or directed at New Jersey. None of them has ever been qualified or licensed to do business in New Jersey, and none of them has ever, until the above-captioned action was filed, been involved in any court litigation, arbitration, mediation, or other legal proceedings in New Jersey. None of them has ever entered into any contracts in New Jersey or entered into any contracts governed by New Jersey law or in which state or federal courts in New Jersey are the chosen venue for resolution of legal disputes.

16. The complaint in this case is rooted in transactions in the BVI pursuant to which Pusser's Ltd's lawyer, Lloyd De Vos, became a creditor of Pusser's Ltd through the vehicle of a New York limited liability company, Magwitch, that Mr. De Vos owns and controls. The ensuing relationship between Pusser's Florida and Pusser's Ltd, on the one hand, and Magwitch, on the other hand, arose out of events and transactions in the BVI in 2002.

17. In 2002, Pusser's Ltd had business interests in the Caribbean region and, through its wholly-owned subsidiaries, in the United States. These interests included Pusser's branded restaurants and retail operations. In the United States these operations were located in Florida, Maryland, and South Carolina. There were no such operations in New Jersey.

18. Pusser's Ltd financed its operations, including its United states operations, through loans provided by Barclay's Bank in the BVI. To secure itself, Barclay's took a security interest in certain of Pusser's Ltd's assets in the Caribbean and the United States.

-5-

19. By early 2002, Pusser's Ltd had accumulated indebtedness to Barclay's in excess of $11 million. It became clear in the first half of 2002 that Pusser's Ltd was incapable of paying what for it was an enormous debt. Rather than formally declare Pusser's Ltd in default, however, Barclay's negotiated a workout. These negotiations all took place in the BVI. Mr. De Vos gave legal advice to Pusser's Ltd in the BVI in connection with those negotiations.

20. The deal eventually worked out with Barclay's was that the security for the cumulative debt owed by Pusser's Ltd to Barclay's would be allocated between operations in two geographic regions, the Caribbean and the United States. Thus, one portion of the debt would be secured by certain of Pusser's Ltd's assets in the Caribbean, and the balance of the debt, in the amount of $3.3 million, would be secured by certain assets of Pusser's Ltd's subsidiaries in the United States.

21. Pursuant to this arrangement, Pusser's Ltd made a promissory note in the amount of $3,300,000 to Barclay's Bank PLC on May 9, 2002. A true and accurate copy of this promissory note is attached to this declaration as Exhibit A. The promissory note provided that the borrower, Pusser's Ltd., would pay Barclay's the amount of the note plus interest "**on demand**, at its offices at Road Town, Tortola, British Virgin Islands," or at such other place designated by the lender. I signed this note in the BVI on behalf of the borrower, Pusser's, Ltd, and on behalf of the United States subsidiaries of Pusser's Ltd, including Pusser's Florida and the other Pusser's Ltd. subsidiaries whose assets would secure the note. The note contains a choice-of-law clause providing that it "shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the British Virgin Islands."

22. After I made this note, Magwitch purchased the $3.3 million note from Barclay's for $1.5 million. A true and accurate copy of the instrument pursuant to which Barclay's assigned the note to Magwitch is attached hereto as Exhibit B. It was executed in the BVI and is expressly governed by the law of the BVI. The letter from Barclay's to Pusser's Ltd. advising of the transfer of the note to Magwitch directed Pusser's, Ltd. to direct all correspondence and payments to Magwitch in New York.

23. In conjunction with the note, Pusser's Florida, Pusser's MD, Pusser's SC and Pusser's DE were subject to security agreements with Magwitch pledging certain of their assets to secure Pusser's Ltd's indebtedness to Magwitch under the note. True and accurate copies of these security agreements and assignments thereof to Magwitch are attached hereto as Exhibits C and D. I executed the security agreements in the BVI on behalf of these companies, and the assignments of the security from Barclay's to Magwitch were made in the BVI. The security agreements are governed by the laws of Florida, Maryland, South Carolina and Delaware, respectively. None of these security agreements was entered into in New Jersey, pertained to assets in New Jersey, or was in any way governed by New Jersey law.

24. By agreement of all concerned persons, the accounts of all the Pusser's operations in the Caribbean and the United States including the accounts of the restaurants in Maryland and Florida, were managed in the BVI by a single financial comptroller, Kert Tennikait. There were no improper transfers of funds between Pusser's companies as alleged in the complaint. Representatives of the Pusser's entities and Magwitch met often in the BVI and transfers of funds between companies was a topic of discussion. Any agreements or promises with respect to transfers were made in the BVI.

Any inter-company fund transfers that occurred, whether from Caribbean operations to United States operations or vice versa, were effected and booked in the BVI.

25. Mr. De Vos, who owns Magwitch, happens to reside in New Jersey, but I regularly communicated with him, in his capacity as legal advisor, by calling him at his New York law office or sending correspondence there. I never, so far as I can recall, consulted him or asked him for advice about any matter pertaining to New Jersey or New Jersey law. His bills to Pusser's Ltd and Pusser's Florida came from his New York law office. True and accurate copies of sample legal bills from Mr. De Vos's law practice are attached hereto as Exhibit E. Whenever I met with Mr. De Vos in person in the United States, it was almost always in his New York office. I never met with him in person in New Jersey. There were occasions when I spoke with Mr. De Vos on the phone when he was at his residence in New Jersey, but that was merely happenstance. Mr. De Vos's residence in New Jersey has had no bearing on or relationship to the professional dealings I have had with him on behalf of Pusser's companies.

26. To my knowledge, Magwitch is a New York Company and has no business interests in New Jersey. When Barclay's sold the $3.3 million note to Magwitch, it sent Pusser's, Ltd. a letter advising that any communications or payments to Magwitch should be directed to Magwitch in New York. A true and accurate copy of the letter is attached hereto as Exhibit F. Likewise, the assignments of the security agreements to Magwitch all provide a New York business address for Magwitch. Virtually all correspondence from Pusser's Ltd or Pusser's Florida to Magwitch was directed to Magwitch's business address in New York, or care of Mr. De Vos at his law office in New York. Magwitch formally called the note it holds via a letter sent to

BA2DOCS1/323849

Pusser's Ltd in the BVI dated September 13, 2006. That letter showed a New Jersey address for Magwitch. That is the first time I can recall Magwitch's using a New Jersey address.

27.     Neither I nor the Pusser's entities could ever have reasonably expected to be called into the courts of New Jersey for resolution of the disputes that are the subject of the complaint filed by Magwitch, or ever supposed that I or the Pusser's entities could be subject to the personal jurisdiction of courts in New Jersey. None of the written agreements at issue in this case were governed by New Jersey law or chose New Jersey as the place for dispute resolution. Indeed, any time there is an express choice-of-law clause or choice-of-venue provision in an agreement pertaining to the debt or security at issue, the choice is invariably for some state or jurisdiction other than New Jersey.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 23, 2007.

*Charles S. Tobias*
Charles S. Tobias